UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ERICA HUGHES,<br><br>    Plaintiff,<br><br> vs.<br><br>NANCY BERRYHILL, Acting Commissioner, Social Security Administration,<br><br>    Defendant. | 5:17-CV-05085-DW<br><br>ORDER |

## INTRODUCTION

On October 31, 2017, plaintiff Erica Hughes filed a complaint appealing the final decision of Nancy A. Berryhill, the acting Commissioner of the Social Security Administration, finding her not disabled. (Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 7). The court issued a briefing schedule requiring the parties to file a joint statement of materials facts ("JSMF"). (Docket 9). For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 19) is granted.

## FACTS AND PROCEDURAL HISTORY

The parties' JSMF (Docket 14) is incorporated by reference. Further recitation of the salient facts is incorporated in the discussion section of this order.

On April 21, 2014, Ms. Hughes filed an application for Social Security disability benefits alleging an onset of disability date of August 30, 2009.

1

(Docket 14 at ¶ 1). On December 15, 2016, the administrative law judge ("ALJ" issued a decision finding Ms. Hughes was not disabled. Id. ¶ 3; see also Administrative Record at pp. 12-23 (hereinafter "AR at p. ___"). On October 18, 2017, the Appeals Council denied Ms. Hughes' request for review and affirmed the ALJ's decision. (Docket 14 ¶ 3; AR 1-4). The ALJ's decision constitutes the final decision of the Commission of the Social Security Administration. It is from this decision which Ms. Hughes timely appeals.

The issue before the court is whether the ALJ's decision of December 15, 2016, that Ms. Hughes was not "under a disability, as defined in the Social Security Act, since August 30, 2009, through [December 15, 2016]" is supported by the substantial evidence in the record as a whole. (AR at 12-23); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

**STANDARD OF REVIEW**

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 f.3D 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v.

2

Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision… [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 901 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI. 20 CFR § 416.920(a). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation

does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) Whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment – one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform … past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). See also Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992) (the criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520 for disability insurance benefits). The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (AR at pp. 12-23).

## DISCUSSION

### STEP ONE

At step one, the ALJ determined claimant "had not [been] engaged in substantial gainful activity since August 30, 2009, the alleged onset date"[1] of disability.[2] (AR at p. 14).

---

[1] Ms. Hughes sought to amend her onset date to September 1, 2013, in her briefing. The defendant asserts that no formal amendment was made before the Commissioner. Given the court's ruling, it need not address whether it is proper for the court to consider whether the proposed amendment is proper.

[2] The ALJ found plaintiff performed work after the alleged disability onset date but this work activity "did not rise to the level of substantial gainful activity." (AR at p. 14).

### **STEP TWO**

At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 CFR § 404.1520(c). A medically determinable impairment can only be established by an acceptable medical source. 20 CFR § 404.1513(a). Accepted medical sources include, among others, licensed physicians. Id. "It is the claimant's burden to establish that [his] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).

Ms. Hughes asserted disability for chronic regional pain syndrome (CRPS), anxiety, and depression. (AR 15, 89). The ALJ found that Ms. Hughes did not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months. (AR 12).

The parties briefly discuss the ALJ's finding at step two, but focus the majority of their arguments on whether Ms. Hughes meets or equals Listing 12.4(C)(2). (Docket 19 at p. 2; 20 at p. 20). The court will first address whether the ALJ committed error by finding that Ms. Hughes did not have a severe impairment or combination of impairments at step two.

The regulations describe "severe impairment" in the negative. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby, 500 F.3d at 707.

5

Thus, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities. Additionally, impairment must have lasted at least twelve months or be expected to result in death. See 20 CFR § 404.1509.

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. Id. §§ 404.1521(b)(1–6), 416.921(b)(1–6); see Bowen v. Yuckert, 482 U.S. 137, 141, (1987).

"Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard...." Id. at 708 (internal citation omitted). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." Page v. Astrue, 484 F.3d 1040 1043 (8th Cir. 2007).

Here, the ALJ found that Ms. Hughes' conditions of chronic regional pain syndrome (CRPS), anxiety, and depression or the combination thereof did not significantly limit her ability to perform basic work activities. (AR 15). The court will address each impairment.

## 1. Chronic Regional Pain Syndrome (CRPS)

The ALJ cited Social Security Ruling 2003-02p in evaluating whether Ms. Hughes' CRPS constituted a severe impairment. (AR 16). Social Security Ruling 2003-02 sets forth the policy of the Social Security Administration with regard to the development and evaluation of evidence in disability cases where the alleged disability is Reflex Sympathetic Dystrophy ("RSD"), also know as Complex Regional Pain Syndrome ("CRPS"). The ruling explains that CRPS is characterized by complaints of intense pain following what may be a very trifling injury. Id. Surgical procedures are also documented precipitants of CRPS. Id. The Ruling states that "[i]t is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." Id.

In addition to subjective complaints of intense pain, CRPS is usually accompanied by signs of autonomic dysfunction at the site of the precipitating trauma such as swelling, changes in skin color or texture, changes in sweating (either decreased or excessive), skin temperatures changes, abnormal pilomotor erection (gooseflesh), abnormal hair or nail growth (too slow or two fast), osteoporosis, or involuntary movements of the area where the initial injury occurred. Id. The suspected cause of CRPS is a disfunction in the patient's sympathetic nervous system that causes abnormal sympathetic "fight or flight" response to stressful stimuli. Id.

In evaluating claims of disability based on CRPS, the agency states that CRPS is a medically determinable impairment when it is documented by

complaints of persistent pain out of proportion to the severity of the injury coupled with at least one of the above set forth clinically documented signs. Id. The agency cautions that these clinically documented signs are typically transient and will not be present continuously. Id. The ruling also states that conflicting evidence in the medical record is typical rather than unusual in cases involving CRPS because of the transient nature of clinical signs and the difficulty in diagnosing CRPS. Id.

Medical opinions from treating sources as to the nature and severity of a claimant's CRPS are entitled to deference and even to controlling weight where they are supported by medically acceptable clinical and laboratory diagnostic records and they are consistent with other substantial evidence in the record. Id.

The ruling specifically addresses the fact that the chronic pain associated with CRPS and the pain medications prescribed for that pain may adversely affect the patient's ability to maintain attention, concentration, and cognition. Id. The ruling suggests that when an ALJ is evaluating the duration and severity of a claimant's disability from CRPS, "the effects of chronic pain and the use of pain medications must be carefully considered." Id.

In reaching the conclusion that Ms. Hughes failed to demonstrate that her CRPS was a medically determinable impairment, the ALJ relied upon 1) the April 2002 nerve conduction study and needle examination was normal and the provider concluded that there was no electro-physiologic evidence of neuropathy, brachial plexopathy or cervical radiculopathy; and 2) the medical

8

record's absence of any clinical signs of swelling, autonomic instability, abnormal hair or nail growth, or involuntary movements of the affected region. (AR 16). The ALJ concluded that the claimant's providers consistently noted that the claimant was without swelling, osteoporosis, involuntary movements and she had normal, warm and dry skins with a normal color. Id. The ALJ's finding that the medical record is absent of any clinical signs of these symptoms is incorrect and unsupported by the record. Clinical objective observations regarding claimants swelling, changes in skin color or texture, and changes in skin color or texture can be found at JSMF ¶ 9, 11, 51, 85, 88, 97, 98, 99, 100, 101, 102, 103. There does not appear to be any dispute that Ms. Hughes suffers from CRPS.

Dr. Rolf Norlin, performed a consultative examination at the request of the Social Security Administration. JSMF ¶ 178. He diagnosed Ms. Hughes with Reflex Sympathetic Dystrophy causing chronic pain and limited dexterity of the right hand as well as anxiety and depression which combined with chronic pain caused her limited sleep as well as concentration and short term memory problems. Id.

Dr. Morris Susman, a state agency medical consultant, opined that Ms. Hughes was limited to handling and fingering with her right upper extremity on an occasional basis. Id. at ¶ 179. Dr. Susman noted that Ms. Hughes had chronic pain in her right wrist and opined that Ms. Hughes had a severe medically determinable impairment. (AR 17-18). Mr. Tom Burkhart, a state agency medical consultant rendered similar opinions. Id.

9

Dr. Michael Huot is the co-director of Regional Pain Management and a treating physician of Ms. Hughes. He wrote a letter stating that Erica Hughes developed Complex Regional Pain Syndrome in her right arm in 2002 after sustaining a fracture. JSMF ¶ 183. He described it as a very debilitating pain process which continues to affect her on a daily basis. He opined that this debilitating pain prevents her from being able to work a normal day. Id.

The defendant does not appear to argue or offer evidence that Ms. Hughes' CRPS was not medically determinable. Instead, the defendant focuses on the argument that the ALJ properly evaluated and assigned little weight to Dr. Huot's opinion regarding whether her impairments significantly limited Ms. Hughes' functioning. (Docket 15, pp. 15-16).

The issue before the court is whether substantial evidence supports the ALJ's determination that plaintiff's CRPS was not a severe impairment. See Kirby, 500 F.3d at 7007-08. A stated above, a severe impairment is one which significantly limits a physical or mental ability to do basic work activities. 20 CFR § 404.1521.

The ALJ rejected the expert opinion evidence of the severity of the effects of Ms. Hughes' CRPS because of the erroneous finding that there was no clinical observations or objective testing. As outlined above, this finding is contrary to the medical records. Accordingly, it was error for the ALJ to discredit the opinions of Mr. Norlin, Dr. Susman, Dr. Burkhart, and Dr. Huot on this basis.

"The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." Page v. Astrue, 484 F.3d 1040 1043 (8th Cir. 2007). Keeping in the mind that the claimant's burden to show severity is not an onerous requirement, the ALJ errored in finding that Ms. Hughes' CPRS was not severe.

**2. Mental Impairments**

The ALJ found that Ms. Hughes suffered from a medically determinable mental impairment. However, the ALJ found the mental impairments caused no more than mild limitations; he concluded that the impairments were nonsevere and therefore, found the claimant not disabled at step two. Despite these findings, the ALJ analyzed the impairments in the context of whether claimant's impairments or combination of impairments meet or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, which is the analysis for step three, not step two.

Psychiatrist Charles Lord treated Ms. Hughes for her mental health issues approximately 47 times. Dr. Lord opined that Ms. Hughes had marked restrictions on her ability to understand and remember simple instructions, understand and remember complex instructions. In support of his opinions, Dr. Lord wrote "severe memory, concentration and focus impairment due to depressions/metabolic/chronic problems – treatment resistant mood disorder complicated by chronic pain and metabolic deficiencies." JSMF at ¶ 182.

The Social Security Administration's hired psychological expert, Dr. Thomas Atkin, testified at the hearing that he believed that Ms. Hughes met Listing 12.04(C)(2) which is "a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental or physical demands in the environment would be predicted to cause the individual to decompensate." JSMF ¶ 187. Dr. Atkins testified that pain and mental health issues are comorbid which feed off of each other. Of significance to Dr. Atkins, was a incident where Ms. Hughes had to send her daughter to her mother's place to be cared for because she was not at that point capable. Id. at ¶ 184. The ALJ assigned Dr. Aktin's testimony little weight because he found it inconsistent with the treatment records. (AR 22).

Dr. Rolf Norlin conducted a consultative examination at the request of the Social Security Administration. Id. at ¶ 178. Dr. Norlin diagnosed chronic pain of the right wrist following a fracture which resulted in Reflex Sympathtic Dystrophy causing chronic pain and limited dexterity of the right hand as well as anxiety and depression which with chronic pain caused her limited sleep as well as concentration and short term memory problems. Id. He believed that "she can perform all daily self-care activities given enough time and has fairly good repetitive motion of the hands." Id.

State agency consultants Dr. Mark Berkowitz and Dr. Jerry Buchkoski both opined that Ms. Hughes had moderate difficulties in maintaining social function, maintaining concentration, persistence or pace. Dr. Berkowitz and

Dr. Buchkoski opined that Ms. Hughes did not precisely statisfy the diagnostic criteria of listing 12.04 or listing 12.06.

However, at step two, Ms. Hughes need not show that she met the criteria for Listing 12.04, she must only show that the medically determinable impairment significantly limited her physical or mental ability to perform basic work activities. Caviness v. Massanri, 250F.3d 603 (8th Cir. 2001). The burden of a claimant at this state of the analysis is not great.

The ALJ found the treatment records and Dr. Norlin's opinion only demonstrated a mild difficulty in social functioning and concentration, persistence, or pace. (AR 20). The ALJ cited medical records were Ms. Hughes was observed as cooperative with normal verbal production; she could recall three out of three objects after five minutes; she reported that she is able to pay attention for 20 to 30 minutes at a time and could handle changes in routine. Id. The ALJ gave Dr. Lord's opinion that Ms. Hughes was "highly reactive to environmental stressors" little weight because it lacked sufficient explanation as to how the condition affects the claimant's ability to function and the opinion was inconsistent with the Ms. Hughes' report that she felt she was adaptable and that she does "ok" handling changes in routine. Likewise, the ALJ gave little weight to the Dr. Lord's opinions regarding Ms. Hughes' limitations.

The treatment records of Dr. Lord are replete with examples of the effects of Ms. Hughes' depression and anxiety, including not leaving the house for several days, presentation with psychomotor retardation, needing family come

assist her with child care due to her limitations, difficulty with concentration, focus, and memory, insomnia, being anxious about taking her daughter to school, anxious about going anywhere, being avoidant, and states that Ms. Hughes is "definitely disabled regarding her ability to function, hold and job and follow through." JSMF at ¶¶ 129-176. Considering the evidence that "fairly detracts from [the] decision[,]" the court finds that substantial evidence does not support the ALJ's determination.

The court finds the ALJ erred in determining whether Ms. Hughes' mental impairments were a severe impairment. The ALJ's reliance on whether Ms. Hughes met the listing criteria as a means to determine that Ms. Hughes' impairments were not severe for purposes of step two is reversible error.

The failure to identify all of a claimant's severe impairments impacts not only the ALJ's credibility finding, consideration of activities of daily living, by most importantly, a claimant's residual functional capacity ("RFC"). "[F]ailure to consider plaintiff's limitations . . . infect[s] the ALJ's . . . further analysis under step four." Spicer v. Barnhart, 64 Fed. Appx. 173, 178 (10th Cir. 2003).

**ORDER**

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 19) is granted.

IT IS FURTHER ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the case is remanded to the Commission for rehearing consistent with this decision.

DATED this 30th day of March, 2019.

BY THE COURT:

DANETA WOLLMANN
UNITED STATES MAGISTRATE JUDGE